# DELAWARE *v.* FENSTERER

No. 85–214.   Decided November 4, 1985

PER CURIAM.

In this case, the Delaware Supreme Court reversed respondent William Fensterer's conviction on the grounds that the admission of the opinion testimony of the prosecution's expert witness, who was unable to recall the basis for his opinion, denied respondent his Sixth Amendment right to confront the witnesses against him. 493 A. 2d 959 (1985). We conclude that the Delaware Supreme Court misconstrued the Confrontation Clause as interpreted by the decisions of this Court.

I

Respondent was convicted of murdering his fiancée, Stephanie Ann Swift. The State's case was based on circumstantial evidence, and proceeded on the theory that respondent had strangled Swift with a cat leash. To establish that the cat leash was the murder weapon, the State sought to prove that two hairs found on the leash were similar to Swift's hair, and that one of those hairs had been forcibly removed. To prove these theories, the State relied on the testimony of Special Agent Allen Robillard of the Federal Bureau of Investigation.

At trial, Robillard testified that one of the hairs had been forcibly removed. He explained that, in his opinion, there are three methods of determining that a hair has forcibly

been removed: (1) if the follicular tag is present on the hair, (2) if the root is elongated and misshaped, or (3) if a sheath of skin surrounds the root. However, Robillard went on to say that "'I have reviewed my notes, and I have no specific knowledge as to the particular way that I determined the hair was forcibly removed other than the fact that one of those hairs was forcibly removed.'" *Id.*, at 963. On cross-examination, Agent Robillard was again unable to recall which method he had employed to determine that the hair had forcibly been removed. He also explained that what he meant by "forcibly removed" was no more than that the hair could have been removed by as little force as is entailed in "'brushing your hand through your head or brushing your hair.'" Pet. for Cert. 7. The trial court overruled respondent's objection that the admission of Robillard's testimony precluded adequate cross-examination unless he could testify as to which of the three theories he relied upon, explaining that in its view this objection went to the weight of the evidence rather than its admissibility.

The defense offered its own expert in hair analysis, Dr. Peter DeForest, who agreed with Agent Robillard that the hairs were similar to Swift's. Doctor DeForest testified that he had observed that one of the hairs had a follicular tag. He also testified that he had spoken by telephone with Robillard, who advised him that his conclusion of forcible removal was based on the presence of the follicular tag. App. to Pet. for Cert. D–2. Doctor DeForest then proceeded to challenge the premise of Robillard's theory—that the presence of a follicular tag indicates forcible removal. According to Dr. DeForest, no adequate scientific study supported that premise, and a follicular tag could be attached to hairs that naturally fall out.

On appeal, the Delaware Supreme Court reversed respondent's conviction on the authority of the Confrontation Clause. Noting that "[t]he primary interest secured by the Clause is the right of cross-examination," 493 A. 2d, at 963,

the court reasoned that "[e]ffective cross-examination and discrediting of Agent Robillard's opinion at a minimum required that he commit himself to the basis of his opinion." *Id.*, at 964 (footnote omitted). Absent such an acknowledgment of the basis of his opinion, the court believed that "defense counsel's cross-examination of the Agent was nothing more than an exercise in futility." *Ibid.* Since the court could not rule out the possibility that Robillard could have been "completely discredited" had he committed himself as to the theory on which his conclusion was based, it held that respondent "was denied his right to effectively cross-examine a key state witness." *Ibid.* Accordingly, the court reversed without reaching respondent's additional claim that Robillard's testimony was inadmissible under the pertinent Delaware Rules of Evidence. We now reverse the Delaware Supreme Court's holding that Agent Robillard's inability to recall the method whereby he arrived at his opinion rendered the admission of that opinion violative of respondent's rights under the Confrontation Clause.

## II

This Court's Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination. The first category reflects the Court's longstanding recognition that the "literal right to 'confront' the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause." *California* v. *Green,* 399 U. S. 149, 157 (1970). Cases such as *Ohio* v. *Roberts,* 448 U. S. 56 (1980), and *Dutton* v. *Evans,* 400 U. S. 74 (1970), gave rise to Confrontation Clause issues "because hearsay evidence was admitted as substantive evidence against the defendants." *Tennessee* v. *Street,* 471 U. S. 409, 413 (1985). Cf. *Bruton* v. *United States,* 391 U. S. 123 (1968).

The second category of cases is exemplified by *Davis* v. *Alaska*, 415 U. S. 308, 318 (1974), in which, although some cross-examination of a prosecution witness was allowed, the trial court did not permit defense counsel to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." As the Court stated in *Davis*, *supra*, at 315, "[c]onfrontation means more than being allowed to confront the witness physically." Consequently, in *Davis*, as in other cases involving trial court restrictions on the scope of cross-examination, the Court has recognized that Confrontation Clause questions will arise because such restrictions may "effectively . . . emasculate the right of cross-examination itself." *Smith* v. *Illinois*, 390 U. S. 129, 131 (1968).

This case falls in neither category. It is outside the first category, because the State made no attempt to introduce an out-of-court statement by Agent Robillard for any purpose, let alone as hearsay. Therefore, the restrictions the Confrontation Clause places on "the range of admissible hearsay," *Roberts*, *supra*, at 65, are not called into play.

The second category is also inapplicable here, for the trial court did not limit the scope or nature of defense counsel's cross-examination in any way. The Court has recognized that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but [also] . . . allowed to impeach, *i. e.*, discredit, the witness." *Davis*, 415 U. S., at 316. But it does not follow that the right to cross-examine is denied by the State whenever the witness' lapse of memory impedes one method of discrediting him. Quite obviously, an expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory. That the defense might prefer the expert to embrace a particular theory, which it is prepared to refute with special vigor, is irrelevant. "'The main and essential purpose of confrontation is *to secure*

*for the opponent the opportunity of cross-examination.'"*
*Id.*, at 315–316 (quoting 5 J. Wigmore, Evidence § 1395,
p. 123 (3d ed. 1940) (emphasis in original)). Generally
speaking, the Confrontation Clause guarantees an *opportu-
nity* for effective cross-examination, not cross-examination
that is effective in whatever way, and to whatever extent,
the defense might wish. See *Roberts*, 448 U. S., at 73, n. 12
(even where the only opportunity the defense has to cross-
examine the declarant is at a preliminary hearing, except in
"extraordinary cases" where defense counsel provided inef-
fective representation at the earlier proceeding, "no inquiry
into 'effectiveness' is required"). This conclusion is con-
firmed by the fact that the assurances of reliability our cases
have found in the right of cross-examination are fully satis-
fied in cases such as this one, notwithstanding the witness'
inability to recall the basis for his opinion: the factfinder can
observe the witness' demeanor under cross-examination, and
the witness is testifying under oath and in the presence of the
accused. See *id.*, at 63, n. 6.

We need not decide whether there are circumstances in
which a witness' lapse of memory may so frustrate any oppor-
tunity for cross-examination that admission of the witness'
direct testimony violates the Confrontation Clause. In this
case, defense counsel's cross-examination of Agent Robillard
demonstrated to the jury that Robillard could not even re-
call the theory on which his opinion was based. Moreover,
through its own expert witness, the defense was able to sug-
gest to the jury that Robillard had relied on a theory which
the defense expert considered baseless. The Confrontation
Clause certainly requires no more than this.

Although *Green, supra,* involved a witness who professed
a lapse of memory on the stand, that case lends no support
to respondent. In pertinent part, *Green* was a case in which
a minor named Porter informed a police officer of a transac-
tion in which he claimed Green supplied him with drugs. At
trial, Porter professed to be unable to recall how he obtained

the drugs.  The prosecution then introduced Porter's prior inconsistent statements as substantive evidence.  *Green*, 399 U. S., at 152.  This Court held that "the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories."  *Id.*, at 164.  However, the Court also concluded that, in the posture of that case, it would be premature to reach the question "[w]hether Porter's apparent lapse of memory so affected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause . . . ."  *Id.*, at 168.  In this connection, the Court noted that even some who argue that "prior statements should be admissible as substantive evidence" believe that this rule should not apply to "the case of a witness who disclaims all present knowledge of the ultimate event," because "in such a case the opportunities for testing the prior statement through cross-examination at trial may be significantly diminished."  *Id.*, at 169, n. 18 (citations omitted).

We need not decide today the question raised but not resolved in *Green*.  As *Green*'s framing of that question indicates, the issue arises only where a "prior statement," not itself subjected to cross-examination and the other safeguards of testimony at trial, is admitted as substantive evidence. Since there is no such out-of-court statement in this case, the adequacy of a later opportunity to cross-examine, as a substitute for cross-examination at the time the declaration was made, is not in question here.

Under the Court's cases, then, Agent Robillard's inability to recall on the stand the basis for his opinion presents none of the perils from which the Confrontation Clause protects defendants in criminal proceedings.  The Confrontation Clause includes no guarantee that every witness called by the

prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony. Accordingly, we hold that the admission into evidence of Agent Robillard's opinion did not offend the Confrontation Clause despite his inability to recall the basis for that opinion.

The Delaware Supreme Court also appears to have believed that the prosecution breached its "serious obligation not to obstruct a criminal defendant's cross-examination of expert testimony," 493 A. 2d, at 963, seemingly because the prosecution knew in advance that Agent Robillard would be unable to recall the basis for his opinion when he testified at trial. While we would agree that Robillard's testimony at the *voir dire* examination must be taken to have alerted both the prosecution and the defense to his lapse of memory, see App. to Brief in Opposition A–1, we do not think the prosecution was obliged to refrain from calling Robillard unless it could somehow refresh his recollection. Whether or not, under state law, Robillard's opinion should have been admitted into evidence, nothing in the Federal Constitution forbids the conclusion reached by the trial court in this case: that the expert's inability to recall the basis for his opinion went to the weight of the evidence, not its admissibility. See *United States* v. *Bastanipour*, 697 F. 2d 170, 176–177 (CA7 1982), cert. denied, 460 U. S. 1091 (1983). That being so, the prosecution's foreknowledge that its expert would be unable to give the precise basis for his opinion did not impose an obligation on it, as a matter of due process, to refrain from introducing the expert's testimony unless the basis for that testimony could definitely be ascertained. We need not decide whether the introduction of an expert opinion with no basis could ever be so lacking in reliability, and so prejudicial, as to

deny a defendant a fair trial. The testimony of Dr. DeForest, suggesting the actual basis for Robillard's opinion and vigorously disputing its validity, utterly dispels any possibility of such a claim in this case.

The petition for certiorari is granted, the judgment of the Delaware Supreme Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL dissents from this summary disposition, which has been ordered without affording the parties prior notice or an opportunity to file briefs on the merits. See *Maggio* v. *Fulford*, 462 U. S. 111, 120–121 (1983) (MARSHALL, J., dissenting); *Wyrick* v. *Fields*, 459 U. S. 42, 51–52 (1982) (MARSHALL, J., dissenting).

JUSTICE BLACKMUN would grant certiorari and give this case plenary consideration.

JUSTICE STEVENS, concurring in the judgment.

Summary reversal of a state supreme court's application of federal constitutional strictures to its own police and prosecutors in novel cases of this kind tends to stultify the orderly development of the law. Because I believe this Court should allow state courts some latitude in the administration of their criminal law,[1] I voted to deny certiorari. Cf. *California* v. *Carney*, 471 U. S. 386, 395 (1985) (STEVENS, J., dissenting).

On the merits, I find the issue much closer to the question reserved in *California* v. *Green*, 399 U. S. 149, 168–170

---

[1] In *California* v. *Green*, 399 U. S. 149, 171 (1970), THE CHIEF JUSTICE wrote separately "to emphasize the importance of allowing the States to experiment and innovate, especially in the area of criminal justice." He correctly observed that "neither the Constitution as originally drafted, nor any amendment, nor indeed any need, dictates that we must have absolute uniformity in the criminal law in all the States." *Id.*, at 171–172.

24

(1970), than does the Court. The question reserved in *Green* concerned the admissibility of an earlier out-of-court statement by the witness Porter of which Porter disclaimed any present recollection at the time of trial.[2] The question decided by the Court today concerns the admissibility of an earlier out-of-court conclusion reached by a witness who disclaims any present recollection of the *basis* for that conclusion. The reasons for carefully reserving the question in *Green* persuade me that this case should not be decided without full argument. Nevertheless, because the Court has granted certiorari and decided to act summarily, because I am not persuaded that the Federal Constitution was violated, and because the State Supreme Court remains free to reinstate its judgment on the basis of its interpretation of state law, I reluctantly concur in the judgment.

---

[2] "Whether Porter's apparent lapse of memory so affected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case is an issue which is not ripe for decision at this juncture" (footnote omitted). *Id.*, at 168–169. See also *id.*, at 169, n. 18.